IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA INC. and AETNA LIFE INSURANCE COMPANY,<br><br>                              Plaintiffs,<br><br>v.<br><br>MATHEW JAMES and LEALE, INC.,<br><br>                              Defendants. | No. _____ |

**COMPLAINT**

Plaintiffs Aetna Inc. and Aetna Life Insurance Company (together "Aetna") file this Complaint against Defendants Mathew James and his company, Leale Inc.  Defendants and their yet-to-be identified accomplices are engaged in a widespread scheme targeting Aetna. Defendants and their accomplices misappropriate private health information, impersonate Aetna members, without the members' knowledge, and attempt to fraudulently induce Aetna to pay certain physicians more than Aetna would ordinarily pay.  Aetna brings this action to recover damages associated with that fraud and also for an injunction to force Defendants to cease this ongoing wrongful and tortious misconduct.

**I.      INTRODUCTION**

1.      Defendants conduct business on behalf of numerous physicians across the country.  They offer to extract reimbursement from commercial insurers, like Aetna, on behalf of those physicians.  The physicians serviced by Defendants include providers of medical care who have no contract with Aetna setting forth the amount of money they will be paid for rendering care to Aetna members.  These are known as "out-of-network" physicians.  Because of this, the reimbursement owed to these physicians is dictated by the terms of health benefits

plans—that is, Aetna will pay these physicians at the benefit levels set forth in the relevant health plans.  The amounts due to be paid under the terms of the health plans are often far less than the very high billed charges submitted by out-of-network physicians for even relatively simple procedures.

      2.      Defendants developed a scheme in an attempt to fraudulently induce Aetna into paying higher amounts for services rendered to Aetna members, by creating the false impression that Aetna needs to protect these members from being balance billed large sums of money.

      3.      After Aetna makes payment under the terms of a health plan to a physician that uses the Defendants' services, Defendant James and his accomplices perpetrate the following fraudulent scheme to try to extort additional, exorbitant amounts from Aetna:  Defendants call Aetna's customer service centers, and falsely claim to be an Aetna member, or that member's relative, using the member's personal identifying information and medical information that they acquired from the billing physician; impersonating the member, they contend that the member (or the member's purported spouse or relative) received emergency medical care from an out-of-network physician; they lie by stating that the impersonated Aetna member is being balance billed by that provider for staggering sums of money; and they demand that Aetna immediately protect "him" or the Aetna member from this fictitious bill by paying the amount being "demanded" by the physician.

      4.      Many of these calls involve Aetna representatives located in this District and other parts of the Commonwealth.

      5.      Because calls to Aetna customer service representatives are typically subject to being recorded, Aetna has been able to locate, and now possesses, many recordings of

Defendant James and his accomplices calling Aetna customer service centers and falsely assuming the identities of many different people to perpetrate this scheme.

6. In reliance on Defendants' fraudulent misrepresentations, Aetna has made additional payments to physicians that use Defendants' services, believing it was doing so at the behest of Aetna members and to protect them from abusive billing and collection tactics by out-of-network physicians. Aetna believes that the physicians, in turn, pay Defendants a significant portion of money procured from Aetna in this fraudulent manner. Defendant James and his accomplices continue to perpetrate this scheme and continue to actively make telephone contacts to perpetrate this scheme, including into Pennsylvania.

## II. THE PARTIES

7. Plaintiff Aetna Inc. is a Pennsylvania corporation with its principal place of business in Connecticut and with a substantial business operation in Blue Bell, Pennsylvania. Aetna Inc., through its affiliated companies, provides health insurance to its members and provides administrative services for self-funded medical benefits plans throughout the United States.

8. Plaintiff Aetna Life Insurance Company ("ALIC"), one of Aetna Inc.'s affiliates, is a managed care company organized under the laws of Connecticut with a principal place of business in Connecticut. ALIC provides health insurance and administrative services for self-funded medical benefits plans throughout the United States.

9. Defendant Mathew James is an individual who resides in the state of New York. Aetna believes his precise address is 24 Forsythe Drive, East Northport, New York 11731.

10. Defendant Leale Inc. ("Leale") is a New York company with an address of 24 Forsythe Drive, East Northport, New York 11731. Leale has a registered agent located at 45

John Street, Suite 711, New York, New York 10038.  Upon information and belief, Defendant Leale is owned and controlled entirely by Defendant James, and Defendant James implements the fraudulent scheme described herein in whole or in part through Leale.

## III.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds the jurisdictional threshold.

12.     This Court has personal jurisdiction over Defendants because they regularly conduct business within this District and otherwise engaged in the improper conduct at issue within this District, which is ongoing.  For example, Defendants (through James and his accomplices) voluntarily and intentionally reached into the forum to call, under false identities, customer service representatives based in Montgomery County, Pennsylvania in furtherance of their scheme.  Defendants (through James and his accomplices) also reached into this forum, under false identities, to contact other employees of Aetna based in Montgomery County, Pennsylvania in furtherance of the scheme.  Defendants' scheme also implicates medical care provided to residents of Pennsylvania, and the private health benefits records of those residents.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## IV.     FACTUAL BACKGROUND

### A.     Aetna's Network

14.     Aetna and its affiliates offer fully-insured health plans under which it agrees to pay for covered healthcare claims in return for the payment of premiums by plan members or

their employers.  Aetna also acts as an administrator for self-funded, employer-established health plans, through which an employer pays for covered claims out of its own funds.

15. Individuals who are enrolled in health plans insured or administered by Aetna are referred to as "members."

16. Aetna's health plans include covered benefits for "in-network" services.  A healthcare provider is "in network" if it has a contract with Aetna under which it agreed to provide covered services to Aetna members, and Aetna agreed to pay agreed-upon amounts for those services.

17. A health plan may also have out-of-network benefits to cover a portion of the costs associated with receiving treatment from a provider that does not have a contract with Aetna.  Whether a member's plan includes out-of-network benefits is determined by the member or his or her employer.  Even where a member's plan provides out-of-network benefits, a member who receives medical services from a non-participating provider is typically required to pay for a larger share of the costs than if those services had been received from an in-network provider.

18. In this case, the physicians who utilized Defendants' services are out-of-network physicians, who have represented in their claim forms to have rendered emergency medical services to Aetna members.  The amount that Aetna is obligated to pay these physicians is dictated by the terms of each individual health plan and Aetna's payment policies (as opposed to a contract that Aetna has with the providers directly).

B. **Defendants' Scheme to Assume the Identity of Aetna's Members.**

19. Defendants conduct business with numerous physicians and physician practice groups across the country.  To date, Aetna has identified more than 70 physicians and/or

5

practice groups throughout the country that are believed to have utilized or are utilizing the services of the Defendants, but Aetna's investigation is ongoing.

20. Pursuant to their arrangements with these physicians, Defendants assist the physicians in attempting to maximize reimbursement for services allegedly rendered to patients who are members of various managed care companies, including Aetna.

21. Use of billing companies and collection agencies to assist physicians and physician groups in obtaining and tracking reimbursement is not an unusual practice in the healthcare industry. But, the improper tactics used by Defendants go well beyond legitimate billing and collection work.

22. After Aetna pays a claim at the proper benefit level to one of the physicians utilizing Defendants' services, Defendants and their accomplices execute a scheme aimed at inducing Aetna to pay higher amounts to the physicians affiliated with Defendants.

23. Using private patient information and medical records supplied by the treating physician, Defendant James and his accomplices call Aetna customer service representatives and falsely assume the identity of an Aetna member, or a relative or spouse of an Aetna member (for example, by claiming to be the husband or son of an Aetna member) in order to have the Aetna representative discuss the member's medical treatment and claim, and the status of a provider's billed claim. The actual Aetna members are unaware that their identities are being misappropriated in this manner.

24. The sophistication of Defendants' fraud is reflected in their use of internet-based telephone numbers to make contact with Aetna and Aetna customer service centers. By illustration, if Defendant James is assuming the identity of an Aetna member living in Pennsylvania, but he is perpetrating this ruse out of New York, he will use an internet-based

6

telephone number that appears to be originating from Pennsylvania, and that masks the true origin of the call, so that the customer service representative he is dealing with will be further misled into believing that the call is actually being made by or on behalf of the member located in Pennsylvania.

25. Misrepresenting themselves as an Aetna "member" or the "member's" relative, Defendant James or his accomplices falsely tell Aetna representatives that they have communicated with physicians' offices, and that the physicians have told the impersonated "members" that the physicians are not contracted with Aetna, and that the physicians expect to collect from the Aetna members the full amount of the physicians' unpaid charges.

26. Masquerading as the Aetna member or a relative thereof, Defendant James and his accomplices typically feign fear and distress to the Aetna customer service representatives about the amounts allegedly being balance billed by a physician, pleading that Aetna should not allow the bill to "fall on his head", or claiming that, unless the charges are paid, his "life will get completely messed up", or words to that effect.

27. Through repeated telephone calls and under assumed identities, Defendant James or his accomplices implore Aetna representatives to have the physicians' bills reviewed for full payment, and in doing so will generate appeals, case numbers, reference numbers, and the like, that are not authorized by the actual Aetna member. All of this illegitimately created information is entered into the records relating to the real Aetna members. Defendant James and his accomplices then use that information, such as the case numbers and reference numbers, to later conduct follow-up calls—again, under the assumed identities of Aetna members or their relatives—to try to induce Aetna to pay additional sums to Defendants' affiliated physicians.

28. To give further urgency to his efforts at fraudulent inducement, Defendant James and his accomplices, using the misappropriated identities of Aetna members, engage in deceitful tactics such as demanding that Aetna pay higher amounts to prevent the physician from sending the bill into collections; and/or demanding that these higher amounts be paid on an urgent or "emergency" basis, while falsely impersonating an Aetna member.

29. Because Aetna is led to believe that these are valid inquiries and complaints from Aetna members, Defendant James' and his accomplices' communications with Aetna representatives can result in communications being generated by Aetna back to the actual Aetna members, such as via email or U.S. mail, which are not caused by any inquiry from the real Aetna members. Defendants' scheme is thus causing confusion and miscommunications between Aetna and its actual members about their healthcare benefits.

30. Defendant James and his accomplices know that the member contact information in Aetna files relates only to the actual member, so to keep track of the progress of the false complaints being generated by alleged balance billing, Defendant James and his accomplices usually provide the Aetna representative with a cell phone number, and ask to be contacted that way, with any updates on the physicians' claims, and the status of payment. In this manner, the Aetna representatives are falsely induced to communicate further with Defendants, and falsely induced into believing that Defendant James or his accomplices are the actual Aetna member, or relative thereof, and authorized to discuss with Defendants private patient information about physicians' services and claims.

31. Aetna typically records information received from its members when calls are made to inquire about claims and other matters, and Aetna usually records how it responds to members' inquiries. The information is entered into Aetna's systems for future reference and

follow-up. The activities of Defendants are causing false information to be recorded into members' files.

32. Presently, Aetna has no way of knowing the full extent of Defendants' fraud. Aetna will not be able to ascertain the full extent of this problem, and take corrective action, until Defendants are compelled to disclose the full scope of their illegal conduct.

## COUNT I
### Fraud

33. Aetna repeats and realleges all prior paragraphs of the Complaint as if set forth in full herein.

34. Through repeated communications with Aetna described in detail above, Defendants made many materially false statements of fact to Aetna, including by assuming false identities, in furtherance of their fraudulent scheme.

35. Defendants made these material misrepresentations knowing that the statements were false and intending to mislead Aetna into paying Defendants' clients—dozens of physicians and/or physician practice groups—more than what Aetna would ordinarily pay.

36. Aetna justifiably relied on Defendants' materially false representations and their willful, wanton and malicious actions, and as a direct and proximate result, Aetna has been and will continue to be harmed.

37. Defendants' misconduct directed at Aetna further constitutes fraud in that it was and is calculated to deceive Aetna through a multitude of acts of direct falsehood with the intention of causing Aetna to take actions it would otherwise not have.

38. Defendants' misconduct described above was and is willful, wanton, malicious, intentional, and outrageous.

39. As a direct, proximate and reasonably foreseeable result of Defendants'

misconduct, Aetna has sustained monetary losses and other compensable harm.

**WHEREFORE**, Aetna respectfully requests that this Court enter judgment in its favor and against Defendants and award Aetna the following relief:

(a) Actual damages in excess of $150,000, exclusive of interest and costs;

(b) Punitive damages;

(c) A preliminary and permanent injunction, which (i) requires Defendants to immediately disclose the names of all Aetna members whose identities the Defendants have misappropriated in calls to Aetna customer service representatives or to other Aetna employees; (ii) requires Defendants to immediately disclose the identities of all medical care providers and others, such as attorneys, with whom Defendants interact in perpetrating their fraudulent scheme; (iii) enjoins Defendants from obtaining, using, or disclosing the protected health information of any Aetna member; (iv) requires that Defendants immediately preserve and return to Aetna any protected health information of any Aetna member, in whatever form it is stored or maintained; and (v) permanently enjoins Defendants from further engaging in the misconduct identified above, including falsely assuming the identity of Aetna members or their relatives; and

(d) Such other and further relief as this Court may deem just and equitable.

## JURY DEMAND

Aetna hereby respectfully demands a jury trial pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(a).

                                              MARK J. SCHWEMLER
                                              GREGORY S. VOSHELL
                                              ELLIOTT GREENLEAF, P.C.
                                              Union Meeting Corporate Ctr. V
                                              925 Harvest Drive
                                              Blue Bell, PA  19422

DATED: March12, 2019                  *Counsel for Plaintiff Aetna Life Insurance Company*